UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IN RE:<br><br>MICHAEL LAVENDER HODGE II,<br><br>Debtor. | Case No. 20-00656-NGH |
| THE SOURCE STORE, LLC, and DONNELLY PREHN,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL LAVENDER HODGE II,<br><br>Defendant. | Adv. No. 20-06042-NGH |

MEMORANDUM OF DECISION

INTRODUCTION

Plaintiffs, Donnelly Prehn and The Source Store, LLC, brought this adversary proceeding under § 523(a)(4) and (a)(6), seeking a determination that certain debts owed to them are excepted from discharge.[1] Plaintiffs' attorney of record is Matthew Christensen ("Christensen") of the law firm of Angstman Johnson. Defendant appeared

---

[1] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11 U.S.C. §§ 101–1532, and "Rule" citations are to the Federal Rules of Bankruptcy Procedure.

MEMORANDUM OF DECISION - 1

*pro se* and filed a motion to disqualify Christensen from representing Plaintiffs based on prepetition contact between Defendant and attorney Wyatt Johnson ("Johnson") of the Angstman Johnson firm. Doc. No. 12 (the "Motion"). The Motion came on for an evidentiary hearing on March 1, 2021. After considering the evidence and the arguments of the parties, as well as the applicable law, the Court issues the following decision resolving the matter. Rule 7052; 9014.

**FACTS**

Defendant owns and lives at real property located on Cloverdale Road in Ada County, Idaho (the "Real Property"). The Ada County Highway District ("ACHD") undertook a project to widen Cloverdale Road. In connection with that widening project, ACHD obtained an Idaho state court condemnation judgment entitling ACHD to obtain fee simple title to a portion of Defendant's Real Property. Ex. 203. Pursuant to the judgment, ACHD was required to pay $41,039.59.[2] *Id*.

Chase Bank ("Chase") holds a deed of trust encumbering Defendant's Real Property. A dispute arose between Defendant and Chase regarding the application of the condemnation proceeds to the obligation Defendant owed Chase. Defendant stopped making payments to Chase, and Chase sought to foreclose its deed of trust encumbering the Real Property.

---

[2] The judgment indicates this sum would be deposited with the Clerk of the Court. Ex. 203.

MEMORANDUM OF DECISION - 2

Defendant met telephonically with Johnson on April 28, 2020.[3] Prior to that meeting, Defendant provided Angstman Johnson with a Notice of Trustee's Sale regarding the Real Property. The sale was scheduled for May 26, 2020. At the meeting, Defendant discussed his dispute with Chase. Johnson's notes from the meeting indicate Chase received approximately $41,000 in condemnation proceeds but only applied approximately $31,000 to Defendant's loan. Ex. 101. Defendant owed approximately $304,000 to Chase but maintained this amount should have been reduced due to the application of the condemnation proceeds. *Id*. Defendant inquired about recording a lis pendens to stop the foreclosure sale, and Johnson recommended against taking such actions. Johnson advised Defendant he would need to obtain an injunction to stop the foreclosure sale. Johnson further advised Defendant that he would need to provide a $10,000 retainer in order for Johnson to represent him on the Chase matter. *Id*.

Johnson's notes also indicate the Ada County Assessor valued the Real Property at approximately $348,000 and the house located on the Real Property had sustained roof damage and flood damage that Defendant tendered to his insurance company for repair. *Id*. Johnson testified that he did not discuss bankruptcy with Defendant, nor did they discuss any judgment liens encumbering the Real Property. Johnson further explained that he is not a bankruptcy attorney and that if bankruptcy had been discussed, he would have made a note of it in order to refer the matter to one of his partners who handles bankruptcy.

---

[3] Kylie Brede, Defendant's co-worker, helped set up and attended the telephonic meeting.

MEMORANDUM OF DECISION - 3

Johnson charged Defendant $280 for the meeting, and Defendant promptly paid that bill on April 30, 2020. Ex. 200. That same day, Johnson's assistant emailed Defendant, placing the title "NON-ENGAGEMENT LETTER" in the subject line and attaching a letter from Johnson stating:

> Re: Consultation
>
> Dear Mike:
>
> It was a pleasure visiting with you recently for a consultation regarding strategy for addressing the pending foreclosure sale of your house. Although I understand you have decided not to move forward with us at this time, it is critical, should you change your mind and decide to attempt stop of the sale, every day of delay increases the risk that we will be unable to prevent the sale from going forward.
>
> Please feel free to contact me in the future should other legal issues or questions arise. Thank you for consulting with Angstman Johnson.

Ex. 103.

Defendant filed a chapter 7 bankruptcy on July 17, 2020. On October 16, 2020, Plaintiffs initiated this adversary proceeding with Christensen as their counsel.

**DISCUSSION AND DISPOSITION**

    **A.    Argument**

Defendant seeks disqualification of Christensen based upon an alleged conflict of interest due to Defendant's prior interactions with Johnson and pursuant to Idaho Rules of Professional Conduct 1.7 (Current Clients), 1.18 (Prospective Clients), and 1.9 (Former Clients). Defendant's Motion does not articulate whether his relationship to Angstman Johnson is that of a current client, former client, or prospective client. However, during argument, both parties focused on Defendant as a former client.

MEMORANDUM OF DECISION - 4

### B.  Attorney Disqualification Legal Standards

Federal courts look to state law in determining attorney disqualification. *Radcliffe v. Hernandez*, 818 F.3d 537, 543 (9th Cir. 2016); *Parkland Corp. v. Maxximum Co.*, 920 F. Supp. 1088, 1090 (D. Idaho 1996). Under Idaho law, the moving party has the burden of proof in seeking disqualification of counsel. *Parkland Corp.*, 920 F. Supp. at 1091. Moreover, the Idaho Rules of Professional Conduct ("IRPC") are specifically applicable to attorneys practicing in this Court pursuant to LBR 9010.1(g).

Courts are given broad discretion in considering motions to disqualify. *United States v. Obendorf*, 2016 WL 1595347, at *2 (D. Idaho Apr. 20, 2016); *Weaver v. Millard*, 819 P.2d 110, 114 (Idaho Ct. App. 1991). In reviewing such motions, "[t]he goal of the court should be to shape a remedy which will assure fairness to the parties and the integrity of the judicial process." *Crown v. Hawkins Co.*, 910 P.2d 786, 795 (Idaho Ct. App. 1996). However, motions to disqualify are "subjected to 'particularly strict judicial scrutiny'" due to the potential prejudice a party faces by having counsel disqualified and the opportunity to abuse such motions for a tactical benefit. *Pesky v. U.S.*, 2011 WL 3204707, at *1 (D. Idaho July 26, 2011) (quoting *Optyle Eyewear Fashion Int'l Corp. v. Style Co.*, 760 F.2d 1045, 1050 (9th Cir. 1985)).

### C.  Analysis

As noted above, Defendant's motion does not articulate whether his relationship with Angstman Johnson was that of a prospective client, a current client, or a former client. Despite both Plaintiffs' and Defendant's references to Defendant as a former client, the Court finds Defendant was a prospective client only. IRPC 1.18(a) describes a

MEMORANDUM OF DECISION - 5

prospective client as "[a] person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter[.]" Defendant met telephonically with Johnson one time and for less than one hour. The consultation was limited in time and depth and neither Johnson nor Defendant proceeded any further to establish a client-lawyer relationship. Indeed, after the April 28 meeting, Johnson sent Defendant a non-engagement letter, confirming Defendant had elected not to retain Johnson regarding the pending home foreclosure. Defendant's payment for that consultation does not alter his status as a potential client. Defendant did not retain Johnson to act on his behalf in the Chase dispute; he is not a former client. Thus the Court must evaluate what duties Johnson had toward Defendant as a prospective client.

IRPC 1.18 governs a lawyer's duties to prospective clients, stating that a lawyer "shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter." IRPC 1.18(c). If a lawyer is disqualified under Rule 1.18(c), the law firm may not continue representation in the matter unless both the prospective and current client give informed consent, or the disqualified lawyer took steps to avoid exposure to more disqualifying information than was necessary to determine whether to represent the prospective client, and is timely screened from the matter and apportioned no fees, and written notice is promptly given to the prospective client. IRPC 1.18(d).

Defendant proved he did not provide written, informed consent to allow Angstman Johnson to represent Plaintiffs in this adversary proceeding. *See* IRPC 1.18(d)(1).

MEMORANDUM OF DECISION - 6

However, Plaintiffs argue that consent is not required because the law firm is not disqualified. As noted, IRPC 1.18(c) restricts the representation of a client in the same or a substantially related matter but only "if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter." IRPC 1.18(c). As the moving party, Defendant has the burden of proving this adversary proceeding is the same or substantially related to the matter about which Defendant previously consulted Johnson and that Johnson received information from Defendant during that consultation that could be significantly harmful to Defendant in this adversary proceeding. Defendant has not met that burden.

First, Defendant has not established that the matter he consulted with Johnson about is the same or substantially related to this adversary proceeding. The matters do not involve the same transaction or legal dispute. Defendant consulted with Johnson regarding a pending foreclosure sale initiated by Chase and the application of condemnation proceeds to the amount owed Chase on his home loan. In contrast, Plaintiffs' complaint seeks to except certain debts owed to them from Defendant's discharge based on § 523(a)(4) for alleged defalcation in a fiduciary capacity and alleged embezzlement and § 523(a)(6) for alleged willful and malicious injury. The two disputes involve different parties, different facts, and different underlying legal theories. The only connection Defendant draws between the two matters is that the dispute with Chase involved a lien on the Real Property and Plaintiffs may have a judgment lien

MEMORANDUM OF DECISION - 7

encumbering that same property.[4]  This connection is insufficient to make these two matters substantially related.

Second, Defendant has not provided sufficient evidence that Johnson received significantly harmful information during the consultation.  Defendant argues his disclosure of the value of the Real Property, potential damage to the Real Property impacting that value, and his equity in the Real Property is information that would be significantly harmful in the hands of creditors like Plaintiffs.[5]  Defendant does not explain why this information would be particularly harmful to him in this adversary proceeding.  To the extent Defendant implies this information would aid Plaintiffs in collecting on an underlying judgment, the Court notes that Plaintiffs must first prevail in the adversary proceeding to except their judgment from discharge before Plaintiffs could initiate any collection efforts.

Finally, Defendant argues he discussed a potential bankruptcy filing with Johnson during the consultation and this information would be substantially harmful to him in the adversary proceeding.  The record contains contradictory evidence regarding whether Defendant discussed bankruptcy with Johnson.  Johnson testified he did not discuss bankruptcy with Defendant and Johnson's notes from the meeting, which were admitted

---

[4] Plaintiff Donnelly Prehn is listed as a codefendant in the judgment obtained by ACHD, suggesting Prehn had a judgment lien encumbering the Real Property when ACHD initiated the condemnation proceeding.  *See* Idaho Code § 7-707 (requiring a condemnation complaint to name all owners and claimants of the property, if known, as defendants).  However, the record does not include a copy of a recorded judgment.

[5] Defendant was also required to disclose this information on his Schedule A/B when filing his chapter 7 bankruptcy.  Therefore, this information became publicly available when he filed bankruptcy.

MEMORANDUM OF DECISION - 8

into evidence, contain no reference to a potential bankruptcy.  Kylie Brede, Defendant's co-worker, who also attended the telephonic consultation, testified that Defendant disclosed to Johnson that he may file bankruptcy.  Brede's testimony is hearsay and is given lesser evidentiary weight.[6]  Moreover, the Court finds Johnson's testimony on this subject credible and competent.

Even assuming Johnson and Defendant discussed a potential bankruptcy filing, however, Defendant failed to explain why this information would be particularly harmful.  The fact that Defendant was contemplating a bankruptcy filing when he met with Johnson is not harmful information in this adversary proceeding.  That information does not materially advance Plaintiff's nondischargeability claims.  Therefore, disqualification would not be required even if Defendant generally discussed a potential bankruptcy filing with Johnson.

**CONCLUSION**

For the reasons set out above, the Court finds and concludes Defendant's Motion to disqualify will be denied.  The Court will enter an order accordingly.

DATED:  March 9, 2021



_____
NOAH G. HILLEN
U.S. Bankruptcy Judge

---

[6] Plaintiffs did not object to Brede's testimony regarding this matter.

MEMORANDUM OF DECISION - 9